# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BETTYE MAI SULLIVAN,      )
                         )
PLAINTIFF,            )      No.  3:14-cv-01995
                         )      **Judge Trauger/Brown**
v.                      )
                         )
CAROLYN W. COLVIN,       )
COMMISSIONER OF THE SOCIAL   )
SECURITY ADMINISTRATION,    )
                         )
DEFENDANT.         )

**To:  The Honorable Judge Aleta A. Trauger, United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Administrative Record (the record) (Docket Entry 12) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I.        Procedural History

Plaintiff filed for Disability Insurance Benefits (DIB) on May 23, 2011. (Docket Entry 10, p. 60).[1] She claimed an onset of March 10, 2011 and disability due to: back pain, depression, hypothyroidism, and arthritis. (Docket Entry 10, pp. 136, 140). The Commissioner denied the claim twice. (Docket Entry 10, pp. 63, 71). Plaintiff requested a hearing before an Administrative Law Judge (ALJ) and appeared before the ALJ, Elizabeth Neuhoff, on April 23, 2013. (Docket Entry 10, p. 31). Also appearing were the vocational expert (VE) and Robert Parker (Mr. Parker), Plaintiff's attorney. (Docket Entry 10, p. 29). On June 11, 2013, the ALJ decided that Plaintiff

---

1 Page numbers referring to the record herein reflect the Bates Stamp.

was not disabled under the Social Security Act (the Act). (Docket Entry 10, p. 9). The Appeals Council denied Plaintiff's request for review. (Docket Entry 10, p. 1).

On October 17, 2014, the Plaintiff timely brought the instant action and filed a Motion to Proceed *in forma pauperis*, which the Court granted. (Docket Entry 1 and 3). The District Judge referred this action to the Magistrate Judge. (Docket Entry 3). On December 29, 2014, the Defendant filed the Answer and the record. (Docket Entry 9 and 10). On January 27, 2015, Plaintiff filed the Motion for Judgment on the Record and Memorandum in Support of the Motion pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Social Security Administration (the SSA), as set out by the ALJ. (Docket Entry 12). On March 26, 2015, Defendant filed a Response in Opposition, to which Plaintiff filed a Reply without leave of the Court. (Docket Entry 15 and 16). Therefore, the matter is now properly before the Court.

## II. Review of the Record

Relevant medical evidence consists of "at least the 12 months preceding the month in which [the plaintiff] file[s] [her] application unless there is a reason to believe that development of an earlier period is necessary or unless [the plaintiff] say[s] that [her] disability began less than 12 months before [they] filed . . . ." 20 C.F.R. § 416.912(d). Here, Plaintiff concedes in her testimony that she was laid off on the alleged onset date "because of the economy" and that, had she not been laid off, she would have stayed at her job. (Docket Entry 10, p. 35). Therefore, the Magistrate Judge has no reason to believe that development of an earlier period is necessary. At most, relevant medical evidence begins in May 2010.

In June 2010, Plaintiff presented to her primary care physician, Dr. Holly Martz (Dr. Martz) and was diagnosed with hypothyroidism, major depressive effective disorder, and

osteoarthritis of both knees. (Docket Entry 10, p. 253). She continued to see Dr. Martz for management of these issues and routine screenings. (Docket Entry 10, pp. 240-50, 373-94).

On October 11, 2011, Plaintiff presented to Dr. T. Scott Baker (Dr. Baker) at Tennessee Physical Medicine and Pain Management for the chief complaint of back pain. (Docket Entry 10, p. 349). She was assessed with chronic pain syndrome following back surgery that took place more than fifteen years prior. (Docket Entry 10, p. 351).

On July 24, 2010, Plaintiff presented to Dr. Steven McLaughlin (Dr. McLaughlin) for pain in her left elbow and was diagnosed with left lateral epicondylitis. (Docket Entry 10, p. 364). Dr. McLaughlin noted that Plaintiff had "[g]ood motion of the elbow" and Plaintiff indicated that she "want[ed] to try a brace" for the elbow. (Docket Entry 10, p. 364, 367).

## A. Consultative Examiner Assessments

On July 19, 2011, Dr. William Huffman (Dr. Huffman) completed a medical assessment on behalf of Disability Determination Services (DDS). (Docket Entry 10, p. 302). Dr. Huffman opined that Plaintiff "would not be able to lift over 50 pounds. She could lift up to 50 pounds occasionally and up to 20 pounds continuously. She could sit for up to up to seven hours per day, stand for up to five hours per day, and walk up to 5 hours per day." (Docket Entry 10, p. 305). Dr. Huffman assessed that Plaintiff was limited to occasional postural activities, except that she could never climb ladders or scaffolds or kneel. (Docket Entry 10, p. 308).

On August 02, 2011, Dr. Thomas Thrush (Dr. Thrush) completed a physical RFC assessment (Docket Entry 10, p. 320). He found that Plaintiff would be limited to lifting or carrying 50 pounds occasionally and 25 pounds frequently; sitting, standing or walking six hours total each; never climbing ladders, ropes or scaffolding; and frequently performing all other postural activities. (Docket Entry 10, pp. 313-14).

On August 23, 2011 and August 30, 2011, respectively, Lisa Patterson (Ms. Patterson) and Dr. Robert Schilling (Dr. Schilling) completed Psychiatric Reviews. (Docket Entry 10, pp. 329, 331). Dr. Schilling opined that Plaintiff had depressive disorder and both providers found, at most, mild limitations in functioning. (Docket Entry 10, pp. 328, 334, 341).

Finally, on September 17, 2012, Dr. Martz completed a medical source statement for ability to do work related activities, both physically and mentally. (Docket Entry 10, pp. 368-71). Physically, Dr. Martz opined that Plaintiff would be limited to lifting and carrying 50 pounds occasionally, standing and walking for 4 hours, and sitting for 2 hours. (Docket Entry 10, p. 368). She opined that Plaintiff would need to periodically alternate positions, could occasionally twist or bend, but never crouch, or climb stairs or ladders. (Docket Entry 10, pp. 368-69). She also opined that Plaintiff's ability to reach, push, pull, and handle were limited, that plaintiff should avoid exposure to environmental irritants, extreme temperatures, allergens and humidity. (Docket Entry 10, p. 369). She opined that Plaintiff's impairments would cause her to miss about one day of work per month. (Docket Entry 10, p. 369).

### B.    Plaintiff and Witness Testimony

At the hearing, Plaintiff testified that she is currently working at K-Mart as a cashier/cook, where she started on March 28, 2012. (Docket Entry 10, p. 35, 37). She testified that she works part-time and that if she was offered full-time employment, she "probably couldn't do it." (Docket Entry 10, p. 36). She testified that she works four days a week for above five hour shifts, that she stands for three to four hours, and that she may sit to do paperwork. (Docket Entry 10, pp. 36-37).

Plaintiff testified that she is 5 feet 8 inches and weighs 285 pounds. (Docket Entry 10, p. 37). She testified that she drives to work and attends church weekly. (Docket Entry 10, p. 39).

She testified that she has to get up and move during church service. (Docket Entry 10, p. 39). Plaintiff testified that her hobbies include reading and using Facebook on the computer. (Docket Entry 10, p. 39). She testified that she is "not able to do as much" because of her pain. (Docket Entry 10, p. 39). She testified that she started working at K-Mart because she "just needed something to do part-time" and because of "finances." (Docket Entry 10, p. 40). She testified that she tried to find a job where she could sit more. (Docket Entry 10, p. 40). However, she testified that if she found one, she might not be able to perform the job due to her back problems. (Docket Entry 10, p. 40). However, she testified that she could "probably" perform a job where she was seated but could stand, stretch, and sit back down. (Docket Entry 10, p. 40).

Plaintiff testified that she has seen her primary care physician, Dr. Holly Martz (Dr. Martz), since 2008 and that she sees her every six months. (Docket Entry 10, pp. 41; 52). Plaintiff testified she could stand or stay seated for 15 to 20 minutes before needing to switch positions. (Docket Entry 10, p. 41-42). She testified that she could walk for a block or two without needing to stop, that she could lift a gallon of milk, and that she could slide a case of water off of a stack but could not pick it up. (Docket Entry 10, p. 42).

Plaintiff testified that she takes medicine for her thyroid, depression, arthritis, and blood pressure, and that she does not have any side effects. (Docket Entry 10, pp. 43-44). However, she testified later that she takes pain medication which makes her sleepy. (Docket Entry 10, p. 46). She testified that her worst pain is in her lower back and her right knee and that the back pain goes into both legs. (Docket Entry 10, p. 44; 51). Plaintiff testified that knee surgery was recommended, however, she does not "really want to have it right now." (Docket Entry 10, p. 45). Plaintiff testified that she had back surgery in 1995 and 2008. (Docket Entry 10, p. 45).

Plaintiff testified that she lives with her sister and that they both cook, clean, shop, and do laundry. (Docket Entry 10, p. 46). She testified that she has a high school education and no problem reading or writing. (Docket Entry 10, p. 47). She testified that since she was laid off, she has "gotten more stiff and [has been] hurting more." (Docket Entry 10, p. 50). She testified that she is able to take ten minute breaks four or five times during a five hour shift at her current job. (Docket Entry 10, p. 50). She testified that she had neck surgery in 2008, that her pain goes into her right arm, and that she has pain when she moves her neck in any direction. (Docket Entry 10, p. 50). She testified that bending, lifting, turning, sitting, and standing all cause pain, that she has arthritis in her knee, and that she cannot balance on one leg. (Docket Entry 10, p. 51). She testified that she tries to relax and put ice on her knee or elevate it. (Docket Entry 10, pp. 51-52). She testified that she has missed work 10 or 12 times due to back pain. (Docket Entry 10, p. 52).

### 1.     Vocational Expert Testimony

The VE reviewed the past work of Plaintiff. (Docket Entry 10, p. 53). The ALJ then presented the VE with three hypothetical scenarios, considering a person of Plaintiff's age, educational background, and work experience. The first hypothetical was as follows:

> This person can lift or carry 50 pounds on occasion and 25 frequently, sit, stand or walk six hours total each. This person could never climb ladders, ropes or scaffolding but can frequently perform all other postural activities.

(Docket Entry 10, p. 54). The VE testified that under this hypothetical, Plaintiff could perform her past full-time work and could also work as: (1) an assembler, with 3,000 employed in Tennessee and 115,000 employed nationally in this job; (2) a packer, with 1,000 employed in Tennessee and 100,000 employed nationally in this job; and (3) a cleaner, with 20,000 employed in Tennessee and 1,073,000 employed nationally in this job. (Docket Entry 10, p. 54). Next, the second hypothetical scenario was as follows:

> This person can lift or carry 50 pounds on occasion and 25 continuously, sit for seven hours total and stand or walk five hours total each. This person would be better with a sit/stand option and can frequently perform all other postural activities. .

(Docket Entry 10, pp. 54-55). The VE testified that under this hypothetical, Plaintiff could not perform her past full-time work but could work in other jobs. (Docket Entry 10, p. 55). The VE testified that although the number of jobs available would be reduced because of the sit/stand option, Plaintiff could work as: (1) a production worker, with 3,000 employed in Tennessee and 106,000 employed nationally in this job; (2) an inspector, with 1,500 employed in Tennessee and 85,000 employed nationally in this job; and (3) an automatic machine operator, with 1,000 employed in Tennessee and 68,000 employed nationally in this job. (Docket Entry 10, p. 55). Finally, the third hypothetical scenario was as follows:

> This person can lift or carry 50 pounds on occasion and 20 frequently, can sit for two hours total and stand or walk for four hours total. This person would need to shift position at will, can never crouch or climb, and would miss about one day of work per month.

(Docket Entry 10, p. 56). The VE testified that under this hypothetical, there would be no jobs available based on the requirement to miss one day of work per month. (Docket Entry 10, p. 56). Finally, the VE testified that if Plaintiff needed to take up to three ten minute unscheduled breaks throughout an eight hour work day, no work would be available. (Docket Entry 10, p. 56).

### III.     Analysis

### A.     Standard of Review

The issue before the Court, pursuant to 42 U.S.C. § 405(g), is limited to whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ applied the correct legal standards. *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 434 (6th Cir. 2010)(unpublished opinion). "Substantial evidence" is "more than a scintilla of evidence but

less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carrelli*, 390 F. App'x at 434 (quoting *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994)). The Court "may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Carrelli*, 390 F. App'x at 434(citation omitted). If there is "substantial evidence" in the record that supports the ALJ's decision and the ALJ applied the correct legal standard, then the Court must affirm the final decision, "even if the Court would decide the matter differently, and even if substantial evidence also supports the [plaintiff's] position." *Carrelli*, 390 F. App'x at 434 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.1986) (en banc)).

## B. Administrative Proceedings

Disability is defined for Title II DIB claims as an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ uses a 5-step evaluation to determine whether the Plaintiff is "disabled."

i.   If the Plaintiff is engaged in substantial gainful activity, the Court will find that the Plaintiff is not disabled.

ii.  If the Plaintiff *does not* have a severe medically determinable physical or mental impairment meeting the duration requirement or a combination of such impairments, the Court will find that the Plaintiff is not disabled.

iii. If the Plaintiff *does* have an impairment(s) that meets or equals one of the listings of impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (Appendix 1) and meets the duration requirement, the Court will find that the Plaintiff is disabled.

iv.  The court considers the Plaintiff's RFC and past relevant work. If the Plaintiff can still perform their past relevant work, the Court will find that he is not disabled.

v.   The Court considers the Plaintiff's RFC, age, education, and experience to determine if the Plaintiff can perform work *other than* past relevant work. If the Plaintiff can make an adjustment, the Court will find that he is not disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v).

The Plaintiff has the burden of proof for steps 1 to 4. *Carrelli*, 390 F. App'x at 435. The burden shifts to the ALJ at step 5, where the ALJ must "identify a significant number of jobs in the economy that accommodate the [Plaintiff's] RFC and vocational profile." *Carrelli*, 390 F. App'x at 435(citation omitted). To meet this burden, the ALJ may use the medical-vocational guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, known as "the grid." 20 C.F.R. § 404.1569; *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). The ALJ may use the grid as a guide or rely on it in reaching a conclusion, depending upon the Plaintiff.

If a Plaintiff does have nonexertional limitations that "restrict . . . [his] performance of a full range of work at the appropriate [RFC]," then these limitations must be considered and the grid may be used as a guide. *Wright*, 321 F.3d at 616 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981)). In those cases, "the ALJ [is] entitled to rely on the testimony of a [VE] in reaching his decision" as to whether the Plaintiff is disabled or whether the Plaintiff is not disabled and a significant number of jobs exist that the Plaintiff can perform. *Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004)(unpublished opinion)(citation omitted).

If the Plaintiff does not have nonexertional limitations, and "the findings of fact made with respect to a[n] . . . individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule [in the grid], the rule directs a conclusion as to whether the individual is or is not disabled." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (unpublished opinion)(quoting Appendix 2 at § 200.00(a)).

## C.    Notice of Decision

On June 11, 2013, the ALJ made the findings of fact and conclusions of law below.

1. The claimant meets the insured status requirements of [the Act] through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 10, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

3. The claimant has the following severe impairments: back disorder status post-surgery in 1995 and 2008; bilateral knee osteoarthritis; and obesity (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. [T]he claimant has the [RFC] to perform medium work as defined in 20 C.F.R. § 404.1567(c) that is limited to lifting up to fifty pounds occasionally and twenty pounds occasionally; sitting for seven hours in an eight-hour workday; standing and walking for five hours each in an eight-hour workday; and performing all postural activities on a frequent basis. The claimant will perform better if offered a sit/stand option.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant . . . was 45 years old, which is defined as a younger individual 18-49, on the alleged disability onset date. (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See [Social Security Ruling (SSR)] 82-41 and 20 C.F.R. Part 404, Subpt. P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).

11. The claimant has not been under a disability, as defined in [the Act], from March 10, 2011, through the date of this decision (20 C.F.R. § 404.1520(g)).

(Docket Entry 10, pp. 14-16; 22-24). On June 11, 2013, the ALJ made the specific decision:

1. Based on the application for a period of disability and [DIB] protectively filed on May 23, 2011, the claimant is not disabled under sections 216(i) and 223(d) of [the Act].

(Docket Entry 10, p. 24).

## IV.      Claims of Error

### A.      The ALJ erred by not giving proper weight to the opinion of Dr. Holly Martz

Plaintiff argues that the ALJ failed to properly weigh the opinion of Plaintiff's treating physician, Dr. Martz. (Docket Entry 12-1, p. 6).

Pursuant to the "treating physician rule," "[i]f [an ALJ] find[s] that a treating source's opinion *on the issue(s) of the nature and severity of [the plaintiff's] impairment(s)* is *well-supported* . . . and is *not inconsistent* with the other substantial evidence . . . , [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2)(emphasis added); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ *does not* give a treating source's opinion controlling weight, then the ALJ must provide good reasons for the weight he or she does assign. 20 C.F.R. § 404.1527(c)(2). The ALJ must also consider the following factors in deciding what discounted weight to give to the treating sources' opinion:  whether there was an examining relationship; the length of the treatment relationship and frequency of examination; the nature and extent of the relationship; supportable medical evidence; evidence that is consistent with the record; and the source's specialization. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 404.1527(c)(3)-(6).

Here, the record shows that the ALJ considered the medical source statement completed by Dr. Martz. (Docket Entry 10, p. 22). The ALJ noted Dr. Martz's opinion that Plaintiff should be limited to: medium lifting and carrying; standing and walking for four hours in an eight-hour day; sitting for two hours in an eight-hour day; no crouching or climbing stairs; and no exposure to pulmonary irritants or extreme temperatures or humidity. (Docket Entry 10, p. 22). The ALJ

also noted Dr. Martz's opinion that Plaintiff's ability to reach, push, pull and handle were limited. (Docket Entry 10, p. 22). A review of the record confirms this recitation of Dr. Martz's opinion. (Docket Entry 10, pp. 368-69). Dr. Martz also opined that Plaintiff would need to be absent from work "about one day per month" due to her impairments. (Docket Entry 10, p. 369). However, the ALJ assigned Dr. Martz's source statement regarding Plaintiff's physical abilities no weight and explained that Dr. Martz's own medical records and the records of other providers did not support the limitations that Dr. Martz described in the source statement. (Docket Entry 10, p. 22). Moreover, the ALJ found that Plaintiff's testimony "that she would still be working at her previous full-time job had she not been fired supports that she is not as limited as determined by Dr. Martz." (Docket Entry 10, p. 22). Therefore, the record provides substantial evidence that the ALJ provided good reasons, namely lack of consistency and credibility, for giving the opinion of Dr. Martz less than controlling weight.

Still, the record shows that the ALJ considered the 20 C.F.R. § 404.1527 factors. The ALJ noted throughout her decision that Dr. Martz was Plaintiff's primary care provider. (Docket Entry 10, pp. 17-18; 21). The ALJ considered the length of the treatment record and the extent of the relationship, and specifically noted the records from Dr. Martz, which spanned from 2008 through 2011. (Docket Entry 10, p. 17). As discussed above, the ALJ noted the inconsistency between the source statement by Dr. Martz and other medical records. (Docket Entry 10, p. 22). Finally, the ALJ also noted that Dr. Martz was specialized to the extent that she was able to treat Plaintiff's "hypothyroidism, hypertension, and depression . . . ." (Docket Entry 10, p. 21).

Therefore, the record provides substantial evidence that the ALJ properly weighed the opinion of Dr. Martz, properly explained her reasoning for assigning part of Dr. Martz's source statement less than controlling weight, and properly considered the 20 C.F.R. § 404.1527 factors.

**B.    The ALJ erred by not giving proper weight to the opinion of Dr. T. Scott Baker**

Plaintiff also argues that the ALJ failed to properly weigh the opinion of Dr. Baker, who Plaintiff claims is a treating source. (Docket Entry 12-1, p. 8). In her Reply, Plaintiff argues that "the ALJ did not provide the required 'good reasons' for rejecting each of [Dr. Baker's] limitations . . . ." (Docket Entry 16, p. 3).

Plaintiff also argues that, in light of Dr. Baker's opinion, the RFC is flawed. (Docket Entry 12-1, p. 8). Plaintiff asserts that the ALJ found that Dr. Baker "affirmed the medium exertional limitations assessed by Dr. Huffman . . . ." (Docket Entry 10, p. 18; Docket Entry 12-1, p. 8). Then, Plaintiff goes on to argue that since the ALJ gave Dr. Huffman's opinion great weight, and since the ALJ was under the impression that Dr. Baker and Dr. Huffman's opinions were consistent, it is "puzzling" that the RFC is less limiting than Dr. Baker's opinion would have directed. (Docket Entry 12-1, p. 9; Docket Entry 16, p. 2).

These arguments are without merit for several reasons. First, the record shows that Dr. Baker was not a treating source and, therefore, the ALJ did not need to explain the weight that she assigned to his opinion or to the limitations therein. 20 C.F.R. § 404.1527(c)(2). A "treating source" is a plaintiff's "physician, psychologist, or other acceptable medical source who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship[2] with [the plaintiff]." 20 C.F.R. § 404.1502. Dr. Baker treated Plaintiff once in October 2011 for back pain. (Docket Entry 10, p. 349). However, there is no evidence of any subsequent or "ongoing" relationship. Plaintiff does not point to any other office visits or

---

2 20 C.F.R. § 404.1502 (An "ongoing treatment relationship" is a relationship for which "the medical evidence establishes that [the plaintiff] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s). [An ALJ] may consider an acceptable medical source who has treated or evaluated [a plaintiff] only a few times or only after long intervals . . . to be [the] treating source if the nature and frequency of the treatment or evaluation is typical for [the] condition(s).").

evaluations by Dr. Baker and the Magistrate Judge cannot locate any such visits in the record. The Magistrate Judge is persuaded that the management of *chronic* back pain would require more than a single visit, especially in light of Plaintiff's continued reports of disability due, in part, to her back pain. Moreover, the record shows that Plaintiff presented to Dr. Baker as part of a claim for worker's compensation claim. (Docket Entry 10, p. 357). This also belies the argument that Dr. Baker had any ongoing relationship with Plaintiff.

Next, Plaintiff's argument that the RFC is flawed is also without merit. Dr. Baker opined that Plaintiff's work restrictions included: occasional lifting up to 50 pounds, overhead lifting limited to less than 20 pounds, occasional walking, stair climbing, bending, overhead reaching and right leg controls. (Docket Entry 10, p. 351). Dr. Huffman also opined that Plaintiff "would not be able to lift over 50 pounds. She could lift up to 50 pounds occasionally and up to 20 pounds continuously. She could sit for up to up to seven hours per day, stand for up to five hours per day, and walk up to 5 hours per day." (Docket Entry 10, p. 305). The RFC limited Plaintiff to "lifting up to 50 pounds occasionally and 20 pounds occasionally; sitting for seven hours in an eight-hour workday; standing and walking for five hours each in an eight-hour workday." (Docket Entry 10, p. 16). The difference between the RFC and the opinions of Dr. Baker and Dr. Huffman are the RFC limited postural activities to a *frequent* basis while Dr. Baker and Dr. Huffman would have limited the postural activities to mostly an *occasional* basis. (Docket Entry 10, p. 16, 308, 351). However, as explained above, the ALJ was not required to adopt the opinion of Dr. Baker, or Dr. Huffman for that matter. The ALJ was not required to cut and paste their opinions into the RFC, even to the extent that those opinions limited Plaintiff to occasional postural activities instead of frequent postural activities as the ALJ determined. It is well settled that the RFC determination is reserved to the Commissioner. 20 C.F.R. § 404.1527(d).

Finally, the Magistrate Judge notes that an ALJ must still consider the 20 C.F.R. § 404.1527 factors noted above when determining what weight to give to the opinion of a non-treating source even though such opinions "are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013)(citation omitted).

Here, the record shows that the ALJ did consider these factors. She noted that Plaintiff presented to Dr. Baker for back pain and she was aware of the limited extent of the relationship between Plaintiff and Dr. Baker. (Docket Entry 10, p. 18). The ALJ also noted Dr. Baker's pain management specialty. (Docket Entry 10, p. 18). The record also shows that the ALJ compared Dr. Baker's opinion with the other medical evidence. (Docket Entry 10, p. 18).

Therefore, the record provides substantial evidence that the ALJ properly weighed the opinion of Dr. Baker and also properly considered the 20 C.F.R. § 404.1527 factors.

## C.  The ALJ erred by failing to properly consider all of Plaintiff's impairments and by failing to provide sufficient reasons for not finding these impairments to be severe

Plaintiff argues that the ALJ failed to state why she did not find the following to be severe: "bilateral knee osteopenia, left foot calcaneal bone spur, multilevel cervical spondylosis status-post surgery in 2008, and left elbow epicondylitis." (Docket Entry 12-1, p. 9). Plaintiff argues that "[t]he Sixth Circuit, from time immemorial, has held that 'the step two severity regulation . . . has been construed as a *de minimis* hurdle in the disability determination process . . . ." (Docket Entry 12-1, pp. 9-10).

The ALJ determines whether a plaintiff's impairment or combination of impairments is severe at the second step of the disability determination. 20 C.F.R. § 404.1520. The ALJ will find that "[a]n impairment or combination of impairments is ***not severe*** if it does not

significantly limit [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a)(emphasis added). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "In this circuit, the [plaintiff's] burden of proof at step two 'has been construed as a *de minimis* hurdle . . . [A]n impairment can be considered not severe only if it is a slight abnormality that *minimally* affects work ability regardless of age, education, and experience.'" *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 774 (6th Cir. 2008)(unpublished opinion)(citation omitted).

Here, however, the record shows that the ALJ specifically noted Plaintiff's "history of bilateral knee osteoarthritis, a herniated disc at L5-S1, . . . cervical disc displacement and spondylosis for which she underwent . . . surgeries . . . ; lumbar spinal surgery in 1995; and cervical fusion at C4-5 and C6-7 in 2008." (Docket Entry 10, p. 17). The ALJ noted that this history did not preclude basic work activities as evidenced by the fact that Plaintiff "continued to work full-time following those surgeries." (Docket Entry 10, p. 17). The ALJ also specifically noted that Plaintiff was "treated for left lateral epicondylitis." (Docket Entry 10, p. 18). Plaintiff nonetheless "had good range of motion in her left elbow despite some ongoing pain" and presented no evidence "that she sought treatment for her left elbow after July 24, 2012." (Docket Entry 10, p. 19). Finally, the ALJ specifically noted Plaintiff's ankle history. (Docket Entry 10, p. 19). In 2008, Plaintiff presented to Nashville General Hospital for evaluation of a twisted ankle with pain. (Docket Entry 10, p. 198). At that time, Plaintiff was diagnosed with "apparent calcaneal bone spur." (Docket Entry 10, p. 198). However, the ALJ noted that Plaintiff "did not voice any complaints concerning her left ankle after the alleged onset date," and noted that Plaintiff had full range of motion in her left ankle in July 2011. (Docket Entry 10, p. 19).

Therefore, the record provides substantial evidence that the ALJ thoroughly and properly performed the step two severity analysis and properly considered all of Plaintiff's impairments.

**D.     The ALJ erred by failing to consider Plaintiff's impairment of obesity**

Plaintiff argues that although the ALJ found Plaintiff's obesity to be a severe impairment, she failed to meet the requirements of SSR 02-1P and "failed to consider any resulting limitations from . . . Plaintiff's obesity in the RFC." (Docket Entry 12-1, p. 10).

SSR 02-1P provides guidance on the evaluation of obesity. SSR 02-1P, 2000 WL 628049. At the second step of the disability determination, the ALJ will "generally rely on the judgment of a physician who has examined the [plaintiff] and reported his or her appearance and build, as well as weight and height" in order to identify obesity as a medically determinable impairment. SSR 02-1P at *3. At the third step of the disability determination, the ALJ considers if obesity meets the requirements of a listing in Appendix 1 (the listings) and if obesity is medically equivalent to a listing. SSR 02-1P at *5. At the fourth and fifth steps, the ALJ considers obesity in assessing RFC and must explain how he reached a conclusion "on whether obesity caused any physical or mental limitations." SSR 02-1P at *7.

Here, the record shows that the ALJ found obesity to be a severe impairment at step two and found that there was no indication that Plaintiff's obesity "individually or in combination with another impairment meets or medically equals the criteria for any [20 C.F.R. Part 404, Subpart P, Appendix 1] listing" at step three. (Docket Entry 10, pp. 15-16). Then, the ALJ specifically considered that Plaintiff "had diminished hip range of motion bilaterally primarily due to her obesity and reduced cervical extension" and noted her diagnosis of obesity by Dr. Huffman. (Docket Entry 10, p. 18). As Defendant argues, Plaintiff cites nothing in the record that the ALJ purportedly ignored or overlooked that would suggest that Plaintiff's obesity required

greater limitations. Moreover, as stated, the record shows that the ALJ did consider the effect of Plaintiff's obesity on her range of motion when crafting the RFC.

Therefore, the record provides substantial evidence that the ALJ followed the requirements of SSR 02-1P and properly analyzed Plaintiff's obesity.

**E.** **The ALJ erred by failing to include a function by function assessment in the RFC assessment**

The Plaintiff argues that the ALJ failed to perform a "function-by-function" assessment as required under SSR 96-8P. (Docket Entry 12-1, p. 11). However, the Plaintiff does not make *any* citation to the record to support her argument that the ALJ failed to perform the required assessment. Upon review of the record, the Magistrate Judge finds that the ALJ did properly complete the RFC assessment.

Pursuant to SSR 96-8P, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 . . . ." SSR 96-8P, 1996 WL 374186, at *1. Those functions include physical, mental, and other abilities. 20 C.F.R. § 404.1545(b)-(d). The ALJ must "first assess the nature and extent of [the Plaintiff's] . . . limitations and then determine [the Plaintiff's] [RFC] . . ." and must do so based on the entire record. 20 C.F.R. § 404.1545.

Here, the record shows that the ALJ considered the evidence, completed a "function-by-function" analysis, and analyzed the Plaintiff's limitations before determining the RFC. The ALJ considered Plaintiff's medical history, dating back to surgeries well before the relevant medical evidence began. The ALJ considered Plaintiff's history of surgeries as far back as 1988. (Docket Entry 10, pp. 16). The ALJ noted Plaintiff's history of right knee surgeries in 1988,

1993, and 1998 and left knee surgeries in 1989 and 1990, as well as Plaintiff's lumbar spinal surgery in 1995 and cervical spinal surgery in 2008. (Docket Entry 10, p. 17). The ALJ properly considered Plaintiff's physical limitations, as explained at length above. In doing so, the ALJ considered the medical reports from the Plaintiff's primary care physician, non-treating physicians, and the consultative examiners. (Docket Entry 10, pp. 15-20). The ALJ also properly considered Plaintiff's mental limitations and specifically discussed the consultative psychological evaluation by Ms. Patterson, the medical source statement of mental abilities to do work related activities by Dr. Martz, and the psychological assessments by Dr. Schilling. (Docket Entry 10, pp. 15-16). The ALJ also considered Plaintiff's testimony and her own reports of her limitations. (Docket Entry 15, 19). As for "other abilities," the ALJ noted Plaintiff's glaring admission that "she would have stayed at her job had she not been fired" on her alleged onset date and Plaintiff's testimony that "she thought she could perform a job that allowed her to sit and stand at will." (Docket Entry 10, p. 19).

Therefore, the record provides substantial evidence that the ALJ completed a "function-by-function" assessment as required under SSR 96-8P.

Ultimately, the Magistrate Judge finds that there is substantial evidence in the record to support the ALJ's findings of fact and finds that the ALJ applied the correct legal standard.

## V.    Recommendation

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that the Plaintiff's Motion for Judgment on the Administrative Record (the record) (Docket Entry (DE) 12) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

The parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation

proposed herein.  A party shall respond to the objecting party's objections to this R&R within

fourteen (14) days after being served with a copy thereof. Failure to file specific objections

within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal.

*Thomas v. Arn*, 474 U.S. 140, 149 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380

F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 17th day of August, 2015.

s/Joe B. Brown_____
Joe B. Brown
U.S. Magistrate Judge